**21 CV 07201**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMSUNG DISPLAY CO., LTD., | |
| *Plaintiff,* | **FILED UNDER SEAL** |
| *v.* | |
| SOLAS OLED LTD. and NEODRON LTD. | Civil Action No. _____ |
| *Defendants.* | |

## COMPLAINT

Plaintiff Samsung Display Co., Ltd., ("Samsung Display"), by and through its undersigned counsel, for its Complaint against Defendants Solas OLED Ltd. ("Solas") and Neodron Ltd. ("Neodron"), alleges as follows:

### NATURE OF THE ACTION

1.      Neodron and Solas have engaged in a relentless campaign of litigation against various Samsung entities.  Neodron and Solas are "patent trolls" associated with the same hedge fund—Magnetar Capital.  Neodron and Solas buy patents, not to use the patented technology, but to accuse others of infringement.  They hope to obtain large damage awards or, more often, extort settlement payments for unnecessary licenses to practice the patents.  Between the two of them, they have filed no fewer than *twelve lawsuits* in the United States since May 2019 against Samsung Display, Samsung Electronics Co., Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA").

2.      Defendants' campaign began in May 2019 with Solas filing an action in the Eastern District of Texas, ultimately asserting infringement of three patents against Samsung Display, SEC, and SEA.  Neodron thereafter repeatedly sued SEC and SEA in the International Trade Commission and the Western District of Texas.  While it filed two lawsuits against

Samsung Display in the Western District of Texas, Neodron did not serve Samsung Display with either complaint, and the cases were eventually dismissed.  These lawsuits were followed by additional actions from Solas against Samsung Display, SEC, and SEA in the International Trade Commission and the Eastern District of Texas.  Samsung Display has incurred, and continues to incur, substantial expense in defending these actions.

3.       In ███████████, Neodron was not actively litigating any cases against Samsung Display, but they decided to enter into a license.  Through this agreement, Samsung Display wanted to forestall all future litigation and achieve worldwide peace forever—with Neodron and its associates.  In exchange for paying more than ██████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████.  The agreement by Samsung Display and Neodron consists of a broad patent license agreement (the "PLA") that incorporates an escrow agreement (the "Escrow Agreement").[1]  The PLA, the Escrow Agreement, and their exhibits are referred to collectively herein as the "License Agreement" (attached as Exhibit A and filed under seal).  In the PLA, Neodron represented and warranted that it ████████

████████████████████████████.

4.       But Solas continued the campaign.  Not only did it fail to drop any of its pending lawsuits against Samsung Display, it added to the list.  In late December 2020, Solas filed another action in the International Trade Commission, ultimately asserting two patents against Samsung Display.  In February 2021, Solas filed another lawsuit against Samsung Display in the

---

[1] Samsung Display understands SEC also entered into a virtually identical license agreement with Neodron around that same time.

Western District of Texas, reasserting one of the patents from the May 2019 action that was later invalidated by both a jury and by *inter partes* review.  In March 2021, Solas filed yet another lawsuit in the Eastern District of Texas against Samsung Display, ultimately asserting three patents, including a patent it also asserted in the May 2019 action and that was later found invalid by the Patent Trial and Appeal Board ("PTAB").

5.      It now appears that Solas and Neodron are alter egos, or at least closely related entities that work together to maximize their revenue from infringement claims.  Neodron controls at least some of Solas's patents and has the ability to license them.  In fact, one patent Solas asserted ██████████████████████████████████████ ██████████████████████ to Samsung Display.  At least two other patents for which Solas is the recorded owner are also ███████████████████████████ ███████████████.  That means the license Samsung Display bought and paid for in ██████████ ████ encompasses at least some of Solas's patents.

6.      Samsung Display cannot have liability under patents Neodron controls, even if Solas owns them and continues to assert them.  And Neodron is required to █████████████ ███████████████████ from any litigation in which Solas asserts a patent that Neodron controls.  Moreover, under the License Agreement's ████████████████████████ ███████████████ for any claim by Solas that Samsung Display is infringing a patent that Neodron controls because that question rests in part on the License Agreement.

7.      Samsung Display therefore brings this action for damages from the breach of the License Agreement, for a declaration that the License Agreement is being breached by Defendants' continuing litigations against Samsung Display based on licensed patents, for a

declaration that Samsung Display is licensed to practice patents Defendants have asserted, and for a declaration that Samsung Display does not infringe those patents.

## PARTIES

8.     Samsung Display is a corporation organized under the laws of the Republic of Korea, with its principal place of business at 1 Samsung-ro, Giheung-gu, Yongin-si, Gyeonggi-Do, 17113, Republic of Korea.

9.     On information and belief, Solas is a technology licensing company organized under the laws of Ireland, with its headquarters at The Hyde Building, Suite 23, The Park, Carrickmines, Dublin 18, Ireland.  On information and belief, Realta Investments Ireland DAC, an Irish corporation managed by Magnetar Capital LLC, owns much of Solas.  On information and belief since no later than November 2020, Solas and Neodron were and are closely related entities or alter egos.

10.     On information and belief, Neodron is a technology licensing company organized under the laws of Ireland, with its headquarters at The Hyde Building, Suite 23, The Park, Carrickmines, Dublin 18, Ireland.  On information and belief, Realta Investments Ireland DAC, an Irish corporation managed by Magnetar Capital LLC, owns much of Neodron.  On information and belief, since no later than November 2020, Neodron and Solas were and are closely related entities or alter egos.

## JURISDICTION AND VENUE

11.     Samsung Display brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, for declaratory judgments of non-infringement of certain patents under the Patent Laws of the United States, 35 U.S.C. §§ 101 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law causes of action because they are related to claims in the action within the Court's subject-matter jurisdiction and form part of the same case or controversy.  In this case, the state-law claims are derived from the same common nucleus of operative fact.

13.     This Court has personal jurisdiction over Defendants in the Southern District of New York.  Under ███████ of the Escrow Agreement and ███████ of the PLA, Neodron ████████████████████████████████ and agreed to designate ██████ ████████████████████████████████ the License Agreement. Solas also consented to personal jurisdiction in this forum because, as explained below, Solas is bound by the License Agreement for the reasons provided throughout this complaint.  Moreover, on information and belief, Defendants, directly or through their agents and alter egos, have conducted the business activities at issue in this lawsuit in New York.  Those activities include patent licensing efforts, such as negotiating and signing agreements related to patent licenses within the Southern District of New York.  This action arises out of and relates to those activities that Defendants have purposefully conducted in New York or directed at New York and this District.  Neodron requested that Samsung Display ████████████████████ ████████████████████, which location is within this District. On information and belief, the Defendants or their agents and alter egos have an office at this location.  On information and belief, Gerald Padian, a director of Neodron and a director of Solas, also has an office at 81 Main Street, Suite 209, White Plains, New York, from which he conducts business for Defendants within this District, including negotiating the License Agreement on behalf of Defendants.

14.     Venue is proper within this District under 28 U.S.C. §§ 1391(b) and 1391(c).

# BACKGROUND

**Defendants Begin Their Campaign**

15.     On or about May 2, 2019, Solas filed an action in the Eastern District of Texas ultimately asserting three patents against Samsung Display, SEC, and SEA.[2]  *See* Amended Complaint, *Solas OLED Ltd. v. Samsung Display Co., Ltd., et al.*, No. 2:19-cv-00152-JRG (E.D. Tex. Aug. 23, 2019), ECF No. 15.

16.     On or about May 21, 2019, Neodron filed actions in the International Trade Commission and the Western District of Texas asserting that SEC and SEA were infringing four patents.  *See* Complaint, *Certain Touch-Controlled Mobile Devices, Computers, and Components Thereof*, No. 337-TA-1162 (U.S. Int'l Trade Comm'n); Complaint, *Neodron Ltd. v. Samsung Elec. Co., Ltd., et al.*, No. 6:19-cv-00323-ADA (W.D. Tex. May 21, 2019), ECF No. 1. On or about June 28, 2019, Neodron filed another complaint in the Western District of Texas, ultimately asserting seven more patents against Samsung Display, SEC, and SEA.  *See* Second Amended Complaint, *Neodron Ltd. v. Samsung Elec. Co., Ltd., et al.*, No. 1:19-cv-00903-ADA (W.D. Tex. Nov. 17, 2020), ECF No. 71.

17.     While Solas and Neodron were actively litigating against Samsung Display, SEC, and SEA, Neodron assigned to Solas U.S. Patent Nos. 9,292,144 (the "'144 Patent") and 8,736,551 (the "'551 Patent").  Within a few months, it became clear why—by assigning the '144 and '551 Patents to Solas, Neodron sought, on information and belief, to attempt to exclude them from any future settlements or license agreements.

---

[2] The PTAB has since determined in Final Written Decisions that all asserted claims in all three patents are unpatentable, precluding Solas's infringement claims.  A jury also found the asserted claims of one of those patents invalid.  Samsung Display therefore at this time does not burden the Court with claims associated with those patents.

18.     On or about February 14, 2020, Neodron filed actions in the International Trade Commission and the Western District of Texas against SEC and SEA, asserting four more patents.  *See* Complaint, *Capacitive Touch-Controlled Mobile Devices, Computer, and Components Thereof*, No. 337-TA-1193 (U.S. Int'l Trade Comm'n); Complaint, *Neodron Ltd. v. Samsung Elec. Co., Ltd., et al.*, No. 6:20-cv-00121-ADA (W.D. Tex. Feb. 14, 2020), ECF No. 1. On or about July 9, 2020, Neodron filed an action against Samsung Display in the Western District of Texas, asserting five more patents.  *See* Complaint, *Neodron Ltd. v. Samsung Display Co., Ltd.*, No. 6:20-cv-00623-ADA (W.D. Tex. July 9, 2020), ECF No. 1.  Neodron, however, never served Samsung Display in this case even though it remained active for months.

19.     On or about September 14, 2020, Solas filed corresponding actions in the International Trade Commission and the Eastern District of Texas asserting two patents against Samsung Display, SEC, and SEA—U.S. Patent Nos. 7,573,068 (the "'068 Patent") (Exhibit B) and 7,868,880 (the "'880 Patent") (Exhibit C).[3]  *See* Complaint, *Certain Active Matrix OLED Display Devices and Components Thereof*, No. 337-TA-1225 (U.S. Int'l Trade Comm'n); Complaint, *Solas OLED Ltd. v. Samsung Elec. Co., Ltd., et al.*, No. 2:20-cv-00307-JRG (E.D. Tex. Sept. 15, 2020), ECF No. 1.  On November 6, 2020, Solas filed an unopposed motion to terminate the International Trade Commission investigation, which was granted soon after.

20.     On or about November 17, 2020, after Samsung Display informed Neodron (through a third-party intellectual property licensing firm known as RPX) of its intention to enter into the License Agreement and just days before the License Agreement was signed, a court granted Neodron's motion to file an amended complaint to add Samsung Display as a defendant to the June 28, 2019 action pending against SEC and SEA.  *See* Second Amended Complaint,

---

[3] Solas also asserted a third patent in the ITC matter, but that patent is not at issue in this case.

*Neodron Ltd. v. Samsung Electronics Co., Ltd. et al.*, No. 1:19-cv-00903-ADA (W.D. Tex. Nov. 17, 2020), ECF No. 71.  But Neodron never served Samsung Display with this amended complaint.

**Samsung Display Wants Lasting Peace and Therefore Pays a Substantial Sum**

21.     In ███████████, Samsung Display and Neodron agreed to enter into the License Agreement, with Neodron agreeing to immediately take all actions and make all necessary filings to resolve all disputes.  At the time of the License Agreement, Neodron had not served Samsung Display with a complaint in any pending litigation.  Thus, Samsung Display's objective was to obtain the broadest possible license and to protect its downstream customers.  Moreover, while Samsung Display did not have any direct contact with Neodron during the course of the negotiations, Neodron and Samsung Display entered into the License Agreement.  Samsung Display understands that SEC entered into its own license agreement with Neodron around the same time.

22.     In the PLA, Neodron provided Samsung Display and affiliates a broad license to all of Neodron's "Patents."  The PLA defines "Patents" to mean ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ The "Term" is defined in the PLA as ████████████████████████████████████ ████████████████████ In other words, Samsung Display bargained and paid for the broadest possible license—a license to every patent Neodron ████████████████████ ████████████████████████████████████ ██████████ The patents listed on the ██████████████ were just a starting point.

23.     The broad definition of "Patents," rather than a limitation to an █████████

███████████, makes sense in context.  Samsung Display wanted to buy complete peace, but

could not possibly know what patents Neodron ████████████████████████, much

less what patents Neodron would ███████████████████████.  That Neodron, at

least as of today, controls some or all of Solas's patents even if they are not ████████████

█ has only recently come to light.

24.     In the PLA, Neodron represented that Licensor was ████████████████

████████████████████████████████████████████████

█ and has ████████████████████████.  Neodron also agreed that it

would ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████.  In exchange,

Samsung Display agreed, among other things, to pay Neodron over █████████.  Samsung

Display has fully performed its obligations under the License Agreement.

**Neodron and Solas Breach the PLA As Solas Continues the Campaign**

25.     Despite the settlement—and Samsung Display's large payment—Solas continued

to litigate its claims under the '068 and '880 Patents against Samsung Display.

26.     On or about December 28, 2020, Solas filed another complaint in the International

Trade Commission reasserting those same two patents against Samsung Display, SEC, and

SEA—the '068 Patent, the '880 Patent (as well as a third patent that Solas later dropped).  *See*

Complaint, *Certain Active Matrix OLED Display Devices and Components Thereof*, No. 337-

TA-1243 (U.S. Int'l Trade Comm'n).  This new International Trade Commission investigation

and the September 14, 2020 Eastern District of Texas action are referred to herein collectively as

the "First Action."

27.     On or about February 26, 2021, Solas filed a new action in the Western District of Texas against Samsung Display, reasserting a patent that Solas had asserted in its May 2, 2019 action against Samsung Display.  *See* Complaint, *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, No. 6:21-cv-00185-ADA (W.D. Tex. Feb. 26, 2021), ECF No. 1.  This patent has since been invalidated by an Eastern District of Texas jury and the PTAB.

28.     On or about March 22, 2021, Solas filed a new action in the Eastern District of Texas (the "Second Action") against Samsung Display asserting two more patents—U.S. Patent Nos. 7,499,042 (the "'042 Patent") (Exhibit D) and 7,663,615 (the "'615 Patent") (Exhibit E)— and reasserting two other patents that were asserted in the May 2, 2019 action against Samsung Display and have since been invalidated by the PTAB.  *See* Complaint, *Solas OLED Ltd. v. Samsung Display Co., Ltd., et al.*, No. 2:21-cv-00104-JRG (E.D. Tex. Mar. 22, 2021), ECF No. 1.  That same day, Solas filed yet another action in the Eastern District of Texas against SEC and SEA asserting two more patents—the '144 Patent and U.S. Patent No. 8,526,767.  *See Complaint, Solas OLED Ltd. v. Samsung Elec. Co., Ltd., et al.*, No. 2:21-cv-00105-JRG (E.D. Tex. Mar. 22, 2021), ECF No. 1.

29.     On June 11, 2021, SEC and SEA filed suit in this District.  SEC and SEA provided an extensive background history and explained in detail why they believe at least some of Solas's patent portfolio is controlled and licensable by Neodron and therefore covered under its license agreement.  SEC and SEA also sought a determination that the Defendants are bound by and have breached SEC's license agreement, that SEC and SEA have a license to practice the patents in their suit, and that SEC and SEA have not infringed the patents in their suit.  *See* Complaint, *Samsung Elec. Co., Ltd., et al. v. Solas OLED Ltd. & Neodron Ltd.*, No. 1:21-cv-05205-LGS, (S.D.N.Y. June 11, 2021), ECF No. 3 (the "SDNY Action").

30.     Samsung Display learned more about the relationship between Solas and Neodron from the public version of the complaint in the SDNY Action.  It now understands that Solas's decision to continue the First Action and to commence the Second Action violates the License Agreement because the patents asserted are all covered by the PLA.  Most obvious is the '144 Patent that Solas asserted against SEC and SEA in the Eastern District of Texas (*Solas OLED Ltd. v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:21–cv–00105–JRG) because it is ███████████████████████████████████████████████.  But in truth, the patents Solas asserts in these actions against Samsung Display—the '068 Patent, the '880 Patent, the '042 Patent, and the '615 Patent (collectively, the "Patents-in-Suit")—are also covered by the License Agreement for the reasons explained below.  Solas's assertion of the Patents-in-Suit against Samsung Display therefore violates the License Agreement's ████████ ███████████████████████████████████████████████.  Samsung Display has suffered, and continues to suffer, damages from being forced to defend itself in these actions.

31.     Samsung Display sent Neodron notice on July 23, 2021, in accordance with the License Agreement, *see, e.g.*, Ex. A, PLA at § 5.2, asking it to ████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████  Neodron's representative, Jerry Padian, improperly rejected the request on July 26, 2021.

**The License Agreements Cover the Patents-in-Suit**

32.     For multiple reasons, the Patents-in-Suit are properly considered "Patents" under the PLA, meaning Samsung Display has the right under the License Agreement to practice them

and is immune from any suit asserting them.  First, it is undisputed that Neodron is bound to the PLA.  And Neodron and Solas have such a unity of interest and ownership that they should be considered closely related or alter egos, meaning Solas should also be bound to the PLA.  On information and belief, Solas and Neodron have overlapping officers and directors, share offices and employees, and in general have such a unity of interest and ownership that the separate personalities of the corporations no longer exist.  They should not be allowed to retain their separate corporate status in order to achieve inequitable results such as suing Samsung Display for patents that Samsung Display paid Neodron to license.  Solas should also be bound to the PLA, because Solas and Neodron are so closely related that Solas should have foreseen that it would be bound to the PLA by virtue of its relationship with Neodron.

33.     As an example of Solas and Neodron's interconnectedness, the PLA requires that ███████████████████████████████████████████  who, on information and belief, is and has been a director of Solas for the last five years.  Mr. Padian is also a director of Neodron.  Similarly, Ciaran O'Gara, ███████████████████████████████, on information and belief, serves as an officer for both Neodron and Solas.  Mr. O'Gara is also a director of Neodron and Solas.  Further, on information and belief, James Prusko and Sean O'Sullivan are also directors of both Neodron and Solas.

34.     According to the public complaint in the SDNY Action, Mr. Padian cannot even separate the two companies in his mind.  According to the public complaint, in May 2021, SEC and SEA emailed Mr. Padian, and Mr. Padian responded on Neodron's behalf and then offered, on Solas's behalf, to begin license negotiations for the asserted patents (seeking to extract more money from SEC for a license that SEC already bought and paid for).  Thus, in the exact same

email, Mr. Padian spoke for both Neodron and Solas on SEC's license agreement, its application to the '144 Patent, and negotiating a license.

35.     Neodron and its officers' apparent ability to control and assert patents from Solas's patent portfolio, and vice versa, shows that Neodron and Solas are closely related or alter egos, and are truly one entity.  The Patents-in-Suit are thus "Patents" licensed to Samsung Display under the License Agreement, even if Solas, rather than Neodron, owns them.

36.     Second, the PLA defines "Patents" as ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (emphasis added).  As evidenced by its recent actions, Neodron has control over the Patents-in-Suit, and they should therefore be considered "Patents" under the PLA.  That Neodron does not own the Patents-in-Suit does not matter—the "Patents" definition is written in the disjunctive.  As an example, when ████████████████, USPTO records showed that Solas was the owner of the '144 Patent.  Yet Neodron still represented that it ████████████████████ to Samsung Display.  ███████████.  In other words, at the time the PLA was signed, the '144 Patent was ██████████████ by Neodron without regard to its ownership.  Having made these representations and warrantees, Neodron is now estopped from arguing otherwise.  In addition, on information and belief, at least some of Solas's owners, officers, and directors financially benefitted from Samsung Display's payments to Neodron for the license granted by the License Agreement, including the license to the '144 Patent.  And, according to the public complaint in the SDNY Action, when SEC and SEA informed Neodron that Solas had filed suit on patents to which SEC and SEA (and Samsung Display through its own License Agreement) had a license under the agreement Neodron signed, Solas dropped the '144 Patent from that case.

Nothing differentiates the '144 Patent from Solas's other patents meaning, as these actions show, Neodron has control over all of the Patents-in-Suit, even if it is not the recorded owner, because it can license those patents to third parties, direct Solas to transfer those patents, and direct Solas to dismiss causes of action based on those patents.  Due to Neodron's demonstrated level of control, the Patents-in-Suit should be considered "Patents" under the PLA regardless of whether Neodron is the recorded owner.

37.     Third, the Patents-in-Suit might also be considered "Patents" under the PLA because Solas is an "Affiliate" of Neodron within the meaning of the PLA.  The PLA defines "Affiliate" to include entities that Neodron "Controls," and the PLA defines "Control" as ███

████████████████████████████████████████████████████████

█████████████████████████████████████████████ Samsung Display requires discovery to ascertain whether Neodron "Controls" Solas under this definition. If it does, this is another reason the Patents-in-Suit are covered by the License Agreement.

38.     Fourth, Solas should be considered a "Licensor" under the PLA.  The recitals state in the PLA that ████████████████████████████████████████████

████████████████████████████████████████████ then represents and warrants in the PLA that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Because the USPTO

assignment database shows that Neodron assigned Solas the '144 and '551 Patents before Neodron signed the PLA, Solas and Neodron together must be the "Licensor."  That is, the only way for "Licensor" to be the ████████████████████████, including the '144 and '551 Patents, is if "Licensor" includes both Neodron and Solas.  Because Solas is a Licensor under the PLA, Samsung Display is licensed to practice all patents ████████████ ████████ by Neodron *and* Solas, and Solas is obligated to ████████████████████████ any lawsuit involving any of the Patents, including the First Action and the Second Action.

39.     Faced with ongoing lawsuits improperly asserting patents to which Samsung Display is licensed and threats of more lawsuits, and as the victim of multiple breaches of the PLA, Samsung is forced to seek recourse in this Court.  In this action, Samsung Display seeks, among other things, a determination that: (a) each Defendant is bound by and has breached the PLA; (b) Samsung Display has a license to practice the Patents-in-Suit; (c) Samsung Display has not infringed the '068 Patent; (d) Samsung Display has not infringed the '880 Patent; (e) Samsung Display has not infringed the '042 Patent; and (f) Samsung Display has not infringed the '615 Patent.

40.     Samsung Display filed this action in this Court because, as provided by the License Agreement:



41.     The Escrow Agreement, executed in parallel with the license agreement, states that it was intended to facilitate the PLA.  The PLA also states that the ███████████████ ████████████████████████████████████████████████████████ ███████████████ and requires that the parties be ███████████████████ ████████████████████████████████████████████████████████ █████████████████████████.  The Escrow Agreement is ███████████████ ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ The Escrow Agreement also states that ████████████ █████████████████ implying that the clause will survive termination.  ███████████ ███████████████ The PLA also requires that it ██████████████████████ ████████████████████████████████████████████████████ █████████████████████████

42.     The Second Action is a further breach of the PLA because Solas filed this action after the PLA was in effect even though it arises out of or relates to the PLA and the PLA requires that the action be filed in New York.

## COUNT ONE

## Breach of Contract

43.     Samsung Display incorporates all of the above paragraphs as though fully stated herein.

44.     As described above, Neodron entered into the PLA with Samsung Display, whereby Neodron agreed to license patents and also made certain representations, warranties, and covenants.

45.     Among other representations, warranties, and covenants, Neodron stated that it had ███████████████████████████████. Neodron also represented that there had been ████████████████████████████████ under the Patents. ██████████

██████ Neodron agreed to license the Patents to Samsung Display. Neodron also agreed that neither it nor its Affiliates:

████████████████████████████████

46.     Neodron further agreed that in the event Samsung Display provides ████████ to Neodron that it or its Affiliates ████████████████, Neodron would ████████

████████████████████████████████

██████ Neodron agreed that it:

████████████████████████████████

███████

47.     As described herein, Defendants have breached these provisions of the PLA.

48.     Neodron represented in the PLA that "Licensor" had ████████████ to the Patents.  Defendants now assert that Solas is not a Licensor even though, on the date the PLA was signed, Solas was the record owner of the '144 and '551 Patents, which were and still are expressly identified as "Patents."  Either Solas is a Licensor or Neodron breached the PLA's representations and warranties.  Moreover, if Solas is not a Licensor, then Neodron's September 19, 2019 assignment of the '144 and '551 Patents to Solas, taken together with the PLA's express representation that Neodron ████████████, would appear to be part of a scheme by Neodron and Solas to strip Samsung Display of patent rights that it paid over ███████ to license.

49.     Neodron represented that there had been ████████████████ ██████████ to the Patents before ██████████, the PLA's signature date.  But Neodron transferred the '144 and '551 Patents to Solas on September 19, 2019.  Neodron breached its representations in the PLA.

50.     Defendants agreed to promptly ████████████████ ████████████████████ that any of the "Patents" under the PLA were involved. Samsung Display provided Defendants written notice that in the First Action, Solas has sued Samsung Display based on "Patents" under the PLA.  Defendants have refused to dismiss the First Action with prejudice and are still improperly asserting the '068 and '880 Patents against Samsung Display.  Neodron has breached the PLA by failing to cause Solas to dismiss the First Action.

51.     For the same reason, Neodron is also breaching the PLA by allowing Solas to continue prosecuting the Second Action, where Solas is improperly asserting patents that are "Patents" under the PLA.

52.     Neodron agreed to ███████████████████████████████████ ███████████████████████████████████████████████████████████. Neodron now refuses to ██████ Samsung Display.  Neodron has breached the PLA by refusing to █████████████████████████████████████████, despite Samsung Display's request that Neodron do so.

53.     For the same reason, Neodron is also breaching the PLA by failing to ████████ ███████████████████████████████████████.

54.     Neodron agreed not to sue or threaten to sue Samsung Display as to the licensed "Patents."  Since the PLA's effective date, Defendants have engaged in litigation asserting licensed "Patents."  Neodron has breached the PLA by allowing Solas to sue Samsung Display on the Patents-in-Suit.

55.     Solas is bound to the PLA because Solas is the alter ego of Neodron, they are closely related entities, and Solas should be considered a "Licensor" under the PLA for the reasons explained above.

56.     The above-enumerated breaches are exemplary, not exhaustive, and Samsung Display reserves all rights to allege additional breaches by Neodron and Solas, to be proven at trial.

57.     As a direct and proximate cause of Defendants' conduct, Samsung Display has been damaged in the amount it paid for the License Agreement and continues to be damaged by

costs and expenses related to ongoing litigation and uncertainty over the effectiveness of the

License Agreement in light of Defendants' ongoing litigation and continuing threats of litigation.

## COUNT TWO

### Declaratory Judgment of License to Practice the Patents-in-Suit

58.     Samsung Display incorporates all of the above paragraphs as though fully stated

herein.

59.     As described above, an actual and justiciable controversy exists between Samsung

Display and Defendants with respect to Samsung Display's rights under the License Agreement.

60.     The '068, '880, '042, and '615 Patents are supposedly owned by Solas, which is

closely related to or an alter ego of Neodron, and they therefore fall within the definition of

"Patents."  In addition, through conduct alleged herein and on information and belief, the '068,

'880, '042, and '615 Patents were ▮▮▮▮▮▮▮▮▮▮▮ by Neodron, or an Affiliate of

Neodron, as of the Signature Date of the PLA or have become ▮▮▮▮▮▮▮▮ by

Neodron or an Affiliate (including future Affiliates).  Moreover, Solas qualifies as a "Licensor"

under the PLA, and Neodron is estopped from arguing otherwise, so Solas's patents fall within

the definition of "Patents."  Thus, the '068, '880, '042, and '615 Patents fall within the definition

of "Patents" under the PLA.  Under ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮    The term "Patent License" is defined as:

████████████████████████████████████

████████████  Thus, Samsung Display paid Defendants over ███████ up-front for a

perpetual, irrevocable license to the Patents-in-Suit.

61.     Absent the declaratory relief requested from this Court, Samsung Display faces

the current and future risk of patent infringement allegations by Defendants relating to the

Patents-in-Suit (despite the clear language of the License Agreement) as part of Defendants'

efforts to escape the terms of the License Agreement.

62.     Samsung Display therefore seeks entry of a judgment declaring that:

a)  the Patents-in-Suit are covered "Patents" under the License Agreement and
    are covered by the license granted in the License Agreement;

b)  each of the Defendants is a "Licensor" under the License Agreement, and all
    Defendants are bound to the license granted in the License Agreement;

c)  with respect to the Patents licensed in the License Agreement, Defendants
    have no basis to assert against Samsung Display or any of its affiliates any
    patent infringement allegations or to seek injunctive relief or additional
    royalties beyond those specified in the License Agreement and already paid
    by Samsung Display; and

d)  the License Agreement remains in effect and shall remain in effect until the
    end of the Term, as defined in the License Agreement.

63.     A judicial determination is necessary and appropriate so Samsung Display may

ascertain its rights under the License Agreement.  In the absence of a judicial determination of

Defendants' obligations under the License Agreement, Samsung Display will continue to suffer

irreparable harm by reason of Defendants' actions.

## COUNT THREE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,573,068

64.     Samsung Display incorporates all of the above paragraphs as though fully stated

herein.

65.    An actual and justiciable controversy exists between Samsung Display and Defendants concerning the non-infringement of the '068 Patent.

66.    Defendants have alleged and continue to allege that certain products made, used, offered for sale, sold, and imported by SEC or SEA, incorporating products of Samsung Display, in the United States, including the Galaxy J7, Galaxy J3, Galaxy J2, Galaxy A6, Galaxy A6 Plus, Galaxy S7, Galaxy S7 Edge, Galaxy S7 Active, Galaxy S8, Galaxy S8+, Galaxy S8 Active, Galaxy Fold, Galaxy Z Fold2 5G Galaxy A80, Galaxy A71 5G, Galaxy A71 5G UW, Galaxy A51, Galaxy A51 5G, Galaxy A51 5G UW, Galaxy A50, Galaxy A20, Galaxy S9, Galaxy S9+, Galaxy S10, Galaxy S10+, Galaxy S10 5G, Galaxy S10 Lite, Galaxy S10e, Note 8, Note 9, Note 10, Note 10 5G, Note 10+, Note 10+ 5G, Galaxy S20, Galaxy S20+, Galaxy S20 5G, Galaxy S20 Ultra 5G, Galaxy Note20 5G, Galaxy Note20 Ultra 5G, Galaxy Z Flip, and Galaxy Z Flip 5G devices (the "Accused '068 Products"), infringe the '068 Patent.

67.    Samsung Display has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to, and is not now inducing or contributing to the infringement of, any valid and enforceable claim of the '068 Patent, either literally or by application of the doctrine of equivalents.

68.    The Accused '068 Products have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '068 Patent, either literally or under the doctrine of equivalents.

69.    Claims 1 and 13 are the only independent claims of the '068 Patent.

70.    Claims 1 and 13 of the '068 Patent each require "a plurality of driving transistors which are arrayed in a matrix on the substrate, each of the driving transistors having a gate, a source, a drain, and a gate insulating film inserted between the gate, and the source and drain."

71.     The Accused '068 Products do not meet the claim requirement of "a plurality of driving transistors which are arrayed in a matrix on the substrate, each of the driving transistors having a gate, a source, a drain, and a gate insulating film inserted between the gate, and the source and drain" at least because, to the extent the Accused '068 Products comprise a gate, a source, and a drain, the Accused '068 Products do not comprise a gate insulating film inserted between the gate, and the source and drain.

72.     Claims 1 and 13 of the '068 Patent each require "a plurality of signal lines which are patterned together with the gates of said plurality of driving transistors and arrayed to run in a predetermined direction on the substrate."

73.     The Accused '068 Products do not meet the claim requirement of "a plurality of signal lines which are patterned together with the gates of said plurality of driving transistors and arrayed to run in a predetermined direction on the substrate" at least because, to the extent the Accused '068 Products comprise a plurality of signal lines and gates of a plurality of driving transistors, the Accused '068 Products do not comprise said signal lines being patterned together with said gates and arrayed to run in a predetermined direction on the substrate.

74.     Claims 1 and 13 of the '068 Patent each require "a plurality of supply lines which are patterned together with the sources and drains of said plurality of driving transistors and arrayed to cross said plurality of signal lines via the gate insulating film."

75.     The Accused '068 Products do not meet the claim requirement of "a plurality of supply lines which are patterned together with the sources and drains of said plurality of driving transistors and arrayed to cross said plurality of signal lines via the gate insulating film" at least because, to the extent the Accused '068 Products comprise a plurality of supply lines, signal lines, sources, and drains, the Accused '068 Products do not comprise said supply lines being

patterned together with said sources and drains and arrayed to cross said plurality of signal lines via the gate insulating film.

76.     Claim 1 of the '068 Patent requires "a plurality of feed interconnections which are formed on said plurality of supply lines along said plurality of supply lines, respectively."  Claim 13 of the '068 Patent requires "a plurality of feed interconnections which are connected to said plurality of supply lines along said plurality of supply lines."

77.     The Accused '068 Products do not meet the claim requirement of "a plurality of feed interconnections which are formed on said plurality of supply lines along said plurality of supply lines, respectively" and/or "a plurality of feed interconnections which are connected to said plurality of supply lines along said plurality of supply lines" at least because the Accused '068 Products do not comprise any "feed interconnections."  Alternatively, to the extent the Accused '068 Products comprise a plurality of feed interconnections and a plurality of supply lines, the Accused '068 Products do not comprise said feed interconnections being formed on and/or connected to said supply lines along said supply lines.

78.     For at least the above reasons, the Accused '068 Products do not infringe any claims of the '068 Patent, either literally or under the doctrine of equivalents.

79.     Samsung Display does not induce infringement of Claims 1–17 of the '068 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '068 Products do not satisfy several limitations of those claims. Additionally, Samsung Display has not acted with the knowledge or specific intent necessary for induced infringement and has not encouraged others' infringement.

80.     Samsung Display does not contributorily infringe Claims 1–17 of the '068 Patent because, for at least the reasons stated above, there is no direct infringement of those claims

because the Accused '068 Products do not satisfy several limitations of those claims.  In addition, the Accused '068 Products were not especially made or especially adapted for use in an infringement of such patent, have substantial non-infringing uses, and are not a material part of any infringing combination.  Additionally, Samsung Display did not have the knowledge or intent necessary for contributory infringement.

81.    Samsung Display also does not infringe any valid and enforceable claim of the '068 Patent because the License Agreement gives Samsung Display a license to practice the '068 Patent.

82.    Samsung Display is entitled to a judgment from this Court that Samsung Display has not infringed, and does not infringe, any valid and enforceable claim of the '068 Patent, and granting Samsung Display all other declaratory relief to which it may be entitled.

83.    A judicial determination is necessary and appropriate so Samsung Display may ascertain its rights regarding the claims of the '068 Patent.  In the absence of a judicial determination and injunctive relief prohibiting Defendants from asserting this patent, Samsung Display will continue to suffer irreparable harm by reason of Defendants' ongoing litigation, threats, and accusations.

## COUNT FOUR

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,868,880

84.    Samsung Display incorporates all of the above paragraphs as though fully stated herein.

85.    An actual and justiciable controversy exists between Samsung Display and Defendants concerning the non-infringement of the '880 Patent.

86.    Defendants have alleged and continue to allege that certain products made, used, offered for sale, sold, and imported by SEC or SEA, incorporating products of Samsung Display,

in the United States, including the Galaxy J7, Galaxy J3, Galaxy J2, Galaxy A6, Galaxy A6 Plus, Galaxy S7, Galaxy S7 Edge, Galaxy S7 Active, Galaxy S8, Galaxy S8+, Galaxy S8 Active, Galaxy Fold, Galaxy Z Fold2 5G Galaxy A80, Galaxy A71 5G, Galaxy A71 5G UW, Galaxy A51, Galaxy A51 5G, Galaxy A51 5G UW, Galaxy A50, Galaxy A20, Galaxy S9, Galaxy S9+, Galaxy S10, Galaxy S10+, Galaxy S10 5G, Galaxy S10 Lite, Galaxy S10e, Note 8, Note 9, Note 10, Note 10 5G, Note 10+, Note 10+ 5G, Galaxy S20, Galaxy S20+, Galaxy S20 5G, Galaxy S20 Ultra 5G, Galaxy Note20 5G, Galaxy Note20 Ultra 5G, Galaxy Z Flip, and Galaxy Z Flip 5G devices (the "Accused '880 Products"), infringe the '880 Patent.

87.    Samsung Display has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to, and is not now inducing or contributing to the infringement of, any valid and enforceable claim of the '880 Patent, either literally or by application of the doctrine of equivalents.

88.    The Accused '880 Products have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '880 Patent, either literally or under the doctrine of equivalents.

89.    Claims 1, 2, 3, and 25 are the only independent claims of the '880 Patent.

90.    Claim 1 of the '880 Patent requires "a power source drive unit which supplies to the display pixels a drive voltage for controlling a drive state of each of the display pixels" wherein a "drive control unit [] controls the power source drive unit to operate to set the display pixels to a non-display state."  Claim 3 of the '880 Patent requires "control[ling] a voltage value of the drive voltage supplied from the power source drive unit to set the display pixels to a non-display operation state."  Claim 25 of the '880 Patent requires "supplying as the drive voltage a voltage which sets each of the display pixels to a non-display operation state."

91.     The Accused '880 Products do not meet the claim requirement of "a power source drive unit which supplies to the display pixels a drive voltage for controlling a drive state of each of the display pixels" wherein a "drive control unit [] controls the power source drive unit to operate to set the display pixels to a non-display state," "control[ling] a voltage value of the drive voltage supplied from the power source drive unit to set the display pixels to a non-display operation state," and/or "supplying as the drive voltage a voltage which sets each of the display pixels to a non-display operation state" at least because the Accused '880 Products do not comprise setting the display pixels to a non-display operation state via controlling a voltage value and/or supplying a voltage value.

92.     Claim 2 of the '880 Patent requires "wherein the setting of each display pixel to the non-display operation state comprises setting a specific bias state by eliminating the bias state set, corresponding to the gradation signal."

93.     The Accused '880 Products do not meet the claim requirement of "wherein the setting of each display pixel to the non-display operation state comprises setting a specific bias state by eliminating the bias state set, corresponding to the gradation signal" at least because, to the extent the Accused '880 Products comprise eliminating the bias state set corresponding to the gradation signal, the Accused '880 Products do not perform setting of each display pixel to the non-display operation state comprising setting a specific bias state by eliminating the bias state set, corresponding to the gradation signal.

94.     For at least the above reasons, the Accused '880 Products do not infringe any claims of the '880 Patent, either literally or under the doctrine of equivalents.

95.     Samsung Display does not induce infringement of Claims 1–40 of the '880 Patent because, for at least the reasons stated above, there is no direct infringement of those claims

27

because the Accused '880 Products do not satisfy several limitations of those claims. Additionally, Samsung Display has not acted with the knowledge or specific intent necessary for induced infringement and has not encouraged others' infringement.

96.     Samsung Display does not contributorily infringe Claims 1–40 of the '880 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '880 Products do not satisfy several limitations of those claims.  In addition, the Accused '880 Products were not especially made or especially adapted for use in an infringement of such patent, have substantial non-infringing uses, and are not a material part of any infringing combination.  Additionally, Samsung Display did not have the knowledge or intent necessary for contributory infringement.

97.     Samsung Display also does not infringe any valid and enforceable claim of the '880 Patent because the License Agreement gives Samsung Display a license to practice the '880 Patent.

98.     Samsung Display is entitled to a judgment from this Court that Samsung Display has not infringed, and does not infringe, any valid and enforceable claim of the '880 Patent, and granting Samsung Display all other declaratory relief to which it may be entitled.

99.     A judicial determination is necessary and appropriate so Samsung Display may ascertain its rights regarding the claims of the '880 Patent.  In the absence of a judicial determination and injunctive relief prohibiting Defendants from asserting this patent, Samsung Display will continue to suffer irreparable harm by reason of Defendants' ongoing litigation, threats, and accusations.

**COUNT FIVE**

**Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,499,042**

100.    Samsung Display incorporates all of the above paragraphs as though fully stated herein.

101.    An actual and justiciable controversy exists between Samsung Display and Defendants concerning the non-infringement of the '042 Patent.

102.    Defendants have alleged and continue to allege that certain products made, offered for sale, and sold by SEC or SEA, incorporating products of Samsung Display, in the United States, such as OLED display panels (the "Accused '042 Products"), infringe the '042 Patent.

103.    Samsung Display has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to, and is not now inducing or contributing to the infringement of, any valid and enforceable claim of the '042 Patent, either literally or by application of the doctrine of equivalents.

104.    The Accused '042 Products have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '042 Patent, either literally or under the doctrine of equivalents.

105.    Claims 1, 10, and 11 are the only independent claims of the '042 Patent.

106.    Claim 1 of the '042 Patent requires "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period; and a plurality of pixel circuits which are connected to said plurality of selection scan lines and said plurality of current lines, and supply a driving current having a current value corresponding to the current value of the designating current which flows through

said plurality of current lines; wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines, and stores a level of a voltage converted in accordance with the current value of the designating current, and after the selection period, each of said plurality of pixel circuits shuts off the designating current which flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current."  Claim 10 of the '042 Patent requires "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period; and … wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines, and stores a level of a voltage converted in accordance with the current value of the designating current, and after the selection period, each of said plurality of pixel circuits shuts off the designating current which flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current."  Claim 11 of the '042 Patent requires "after applying the reset voltage, supplying designating currents having current value corresponding to an image signal to the plurality of current lines, and storing, in the plurality of pixel circuits, the current value of the designating currents flowing through the plurality of current lines; and after supplying the designating currents, allowing the plurality of pixel circuits to supply, to the plurality of light-emitting elements, driving currents having current value corresponding to the stored current value of the designating currents."

107.   The Accused '042 Products do not meet the claim requirements of "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period; and a plurality of pixel circuits which are connected to said plurality of selection scan lines and said plurality of current lines, and supply a driving current having a current value corresponding to the current value of the designating current which flows through said plurality of current lines; wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines, and stores a level of a voltage converted in accordance with the current value of the designating current, and after the selection period, each of said plurality of pixel circuits shuts off the designating current which flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current," "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period; and … wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines, and stores a level of a voltage converted in accordance with the current value of the designating current, and after the selection period, each of said plurality of pixel circuits shuts off the designating current which flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current," and/or "after applying the reset voltage, supplying

designating currents having current value corresponding to an image signal to the plurality of current lines, and storing, in the plurality of pixel circuits, the current value of the designating currents flowing through the plurality of current lines; and after supplying the designating currents, allowing the plurality of pixel circuits to supply, to the plurality of light-emitting elements, driving currents having current value corresponding to the stored current value of the designating currents" at least because the Accused '042 Products do not comprise a designating current.

108.     Claims 1 and 10 of the '042 Patent each require "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period."  Claim 11 of the '042 Patent requires "applying a reset voltage to the plurality of current lines in an initial part of a period in which each of the plurality of selection scan lines is selected [and] after applying the reset voltage, supplying designating currents having current value corresponding to an image signal to the plurality of current lines, and storing, in the plurality of pixel circuits, the current value of the designating currents flowing through the plurality of current lines."

109.     The Accused '042 Products do not meet the claim requirements of "a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period" and/or "applying a reset voltage to the plurality of current lines in an initial part of a period in which each of the plurality of selection scan lines is selected

[and] after applying the reset voltage, supplying designating currents having current value corresponding to an image signal to the plurality of current lines, and storing, in the plurality of pixel circuits, the current value of the designating currents flowing through the plurality of current lines" at least because the Accused '042 Products do not comprise applying a reset voltage to said plurality of current lines and supplying a designating current having a current value corresponding to an image signal to said plurality of current lines.  Moreover, the Accused '042 Products do not comprise applying a reset voltage in a first part of the selection period and supplying a designating current in a second part of the selection period after applying the reset voltage in the selection period.

110.    For at least the above reasons, the Accused '042 Products do not infringe any claims of the '042 Patent, either literally or under the doctrine of equivalents.

111.    Samsung Display does not induce infringement of Claims 1–11 of the '042 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '042 Products do not satisfy several limitations of those claims. Additionally, Samsung Display has not acted with the knowledge or specific intent necessary for induced infringement and has not encouraged others' infringement.

112.    Samsung Display does not contributorily infringe Claims 1–11 of the '042 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '042 Products do not satisfy several limitations of those claims.  In addition, the Accused '042 Products were not especially made or especially adapted for use in an infringement of such patent, have substantial non-infringing uses, and are not a material part of any infringing combination.  Additionally, Samsung Display did not have the knowledge or intent necessary for contributory infringement.

113.     Samsung Display also does not infringe any valid and enforceable claim of the '042 Patent because the License Agreement gives Samsung Display a license to practice the '042 Patent.

114.     Samsung Display is entitled to a judgment from this Court that Samsung Display has not infringed, and does not infringe, any valid and enforceable claim of the '042 Patent, and granting Samsung Display all other declaratory relief to which it may be entitled.

115.     A judicial determination is necessary and appropriate so Samsung Display may ascertain its rights regarding the claims of the '042 Patent.  In the absence of a judicial determination and injunctive relief prohibiting Defendants from asserting this patent, Samsung Display will continue to suffer irreparable harm by reason of Defendants' ongoing litigation, threats, and accusations.

## COUNT SIX

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,663,615

116.     Samsung Display incorporates all of the above paragraphs as though fully stated herein.

117.     An actual and justiciable controversy exists between Samsung Display and Defendants concerning the non-infringement of the '615 Patent.

118.     Defendants have alleged and continue to allege that certain products made, offered for sale, and sold by SEC or SEA, incorporating products of Samsung Display, in the United States, such as OLED display panels (the "Accused '615 Products"), infringe the '615 Patent.

119.     Samsung Display has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to, and is not now inducing or contributing to the

infringement of, any valid and enforceable claim of the '615 Patent, either literally or by application of the doctrine of equivalents.

120.   The Accused '615 Products have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '615 Patent, either literally or under the doctrine of equivalents.

121.   Claims 1, 2, 11, and 14 are the only independent claims of the '615 Patent.

122.   Claim 1 of the '615 Patent requires "a drive transistor having a gate and a current path, the gate of the drive transistor being electrically connected to a first end of the current path of the hold transistor and a first end of the current path of the drive transistor being connected to the supplying voltage line."

123.   The Accused '615 Products do not meet the claim requirement of "a drive transistor having a gate and a current path, the gate of the drive transistor being electrically connected to a first end of the current path of the hold transistor and a first end of the current path of the drive transistor being connected to the supplying voltage line" at least because, in the Accused '615 Products, for any and all elements that Defendants have identified as the claimed "drive transistor," the alleged "drive transistor" does not comprise the gate of the drive transistor being electrically connected to a first end of the current path of the hold transistor and a first end of the current path of the drive transistor being connected to the supplying voltage line.

124.   Claim 1 of the '615 Patent requires "a selection transistor having a gate and a current path, the gate of the selection transistor being electrically connected to the selection line, a first end of the current path of the selection transistor being connected to a second end of the current path of the drive transistor, and a second end of the current path of the selection transistor being connected to the data line."

35

125.    The Accused '615 Products do not meet the claim requirement of "a selection transistor having a gate and a current path, the gate of the selection transistor being electrically connected to the selection line, a first end of the current path of the selection transistor being connected to a second end of the current path of the drive transistor, and a second end of the current path of the selection transistor being connected to the data line" at least because, in the Accused '615 Products, for any and all elements that Defendants have identified as the claimed "selection transistor," the alleged "selection transistor" does not comprise the gate of the selection transistor being electrically connected to the selection line, a first end of the current path of the selection transistor being connected to a second end of the current path of the drive transistor, and a second end of the current path of the selection transistor being connected to the data line.

126.    Claims 2, 11, and 14 of the '615 Patent each require "a voltage control section for controlling a drive voltage for making the light emission control section perform the operation."

127.    The Accused '615 Products do not meet the claim requirement of "voltage control section for controlling a drive voltage for making the light emission control section perform the operation" at least because, in the Accused '615 Products, for any and all elements that Defendants have identified as the claimed "voltage control section," the alleged "voltage control section" does not comprise controlling a drive voltage for making the light emission control section perform the operation.

128.    Claim 2 of the '615 Patent requires "the light emission control section includes a drive transistor, in which a first end side of a current path through which the light emission drive current flows is connected to the light emission element and is connected to a first end side of the capacitance element, a supplying voltage for flowing the light emission drive current is applied

to a second end side of the current path, and a control terminal for controlling a supplying state of the light emission drive current is connected to a second end side of the capacitance element."

129. The Accused '615 Products do not meet the claim requirement of "the light emission control section includes a drive transistor, in which a first end side of a current path through which the light emission drive current flows is connected to the light emission element and is connected to a first end side of the capacitance element, a supplying voltage for flowing the light emission drive current is applied to a second end side of the current path, and a control terminal for controlling a supplying state of the light emission drive current is connected to a second end side of the capacitance element" at least because, in the Accused '615 Products, for any and all elements that Defendants have identified as the claimed "drive transistor," the alleged "drive transistor" does not comprise a first end side of a current path through which the light emission drive current flows is connected to the light emission element and is connected to a first end side of the capacitance element, wherein a supplying voltage for flowing the light emission drive current is applied to a second end side of the current path, and wherein a control terminal for controlling a supplying state of the light emission drive current is connected to a second end side of the capacitance element.

130. Claim 11 of the '615 Patent requires "wherein, with respect to each of the display pixels, the data driver applies a precharge voltage exceeding a threshold value of the drive transistor to the data line." Claim 14 of the '615 Patent requires "wherein, with respect to each of the display pixels, the data driver applies a precharge voltage exceeding a minimum luminance value necessary for generating the light emission drive current required for making the light emission element perform a light emission operation at a minimum luminance gradation sequence to the data line."

131.    The Accused '615 Products do not meet the claim requirement of "wherein, with respect to each of the display pixels, the data driver applies a precharge voltage exceeding a threshold value of the drive transistor to the data line" and/or "wherein, with respect to each of the display pixels, the data driver applies a precharge voltage exceeding a minimum luminance value necessary for generating the light emission drive current required for making the light emission element perform a light emission operation at a minimum luminance gradation sequence to the data line" at least because, in the Accused '615 Products, for any and all elements that Defendants have identified as the claimed "precharge voltage," the alleged "precharge voltage" does not exceed a threshold value of the drive transistor to the data line and/or does not exceed a minimum luminance value necessary for generating the light emission drive current required for making the light emission element perform a light emission operation at a minimum luminance gradation sequence to the data line.  Moreover, the Accused '615 Products do not comprise applying a precharge voltage to the data line.

132.    For at least the above reasons, the Accused '615 Products do not infringe any claims of the '615 Patent, either literally or under the doctrine of equivalents.

133.    Samsung Display does not induce infringement of Claims 1–15 of the '615 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '615 Products do not satisfy several limitations of those claims. Additionally, Samsung Display has not acted with the knowledge or specific intent necessary for induced infringement and has not encouraged others' infringement.

134.    Samsung Display does not contributorily infringe Claims 1–15 of the '615 Patent because, for at least the reasons stated above, there is no direct infringement of those claims because the Accused '615 Products do not satisfy several limitations of those claims.  In

addition, the Accused '615 Products were not especially made or especially adapted for use in an infringement of such patent, have substantial non-infringing uses, and are not a material part of any infringing combination. Additionally, Samsung Display did not have the knowledge or intent necessary for contributory infringement.

135.    Samsung Display also does not infringe any valid and enforceable claim of the '615 Patent because the License Agreement gives Samsung Display a license to practice the '615 Patent.

136.    Samsung Display is entitled to a judgment from this Court that Samsung Display has not infringed, and does not infringe, any valid and enforceable claim of the '615 Patent, and granting Samsung Display all other declaratory relief to which it may be entitled.

137.    A judicial determination is necessary and appropriate so Samsung Display may ascertain its rights regarding the claims of the '615 Patent. In the absence of a judicial determination and injunctive relief prohibiting Defendants from asserting this patent, Samsung Display will continue to suffer irreparable harm by reason of Defendants' ongoing litigation, threats, and accusations.

**Prayer for Relief**

WHEREFORE, Samsung Display respectfully asks the Court for the following relief:

A.    Judgment in favor of Samsung Display and against Defendants on all claims and causes of action set forth herein;

B.    Judgment in favor of Samsung Display and against Defendants for breach of the License Agreement and an award of monetary damages for such breach in an amount to be determined at trial;

C.    A declaration that Samsung Display is licensed to practice the "Patents," including the Patents-in-Suit, under the License Agreement;

D.      A declaration that Defendants are "Licensors" under the License Agreement;

E.      A declaration that Samsung Display has not infringed, contributed to the infringement of, nor induced infringement of any claim of any of the Patents-in-Suit, literally or under the doctrine of equivalents;

F.      A declaration that this case is exceptional under 35 U.S.C. § 285;

G.      For reasonable attorneys' fees under 35 U.S.C. § 285;

H.      For Samsung Display's reasonable costs incurred as a result of such lawsuit under ████████████ of the PLA;

I.      For further necessary or proper relief under 28 U.S.C. §§ 2201–02; and

J.      For such other relief as the Court deems just and proper.

DATED:    August 24, 2021

Respectfully Submitted,



**O'MELVENY & MYERS LLP**

Abby F. Rudzin
Laura Bayne Gore
Shane A. Hunt
Times Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
arudzin@omm.com

John Kappos (*pro hac vice* forthcoming)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 923-6994

Darin Snyder (*pro hac vice* forthcoming)
Nathaniel Legum (*pro hac vice* forthcoming)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Ryan Yagura (*pro hac vice* forthcoming)
Nicholas Whilt (*pro hac vice* forthcoming)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

D. Sean Trainor (*pro hac vice* forthcoming)
1625 Eye Street, N.W.
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Plaintiff Samsung Display Co., Ltd.*